UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

JEFFREY P. DALE,

Plaintiff,

v.

SHERYL RAMSTAD HVASS,
LYNN DINGLE, and
CARLA GIERSDORF,

Defendants.

Civil No.00-942 (JRT/ESS)

**REPORT AND RECOMMENDATION**

THIS MATTER is before the undersigned United States Magistrate Judge on Plaintiff Jeffrey P. Dale's pro se complaint, filed pursuant to 42 U.S.C. § 1983, which alleges that Defendants violated his First, Fourth, Sixth, and Fourteenth Amendment rights [Docket No. 1]. Plaintiff seeks both injunctive and monetary relief for the alleged constitutional violations.

Defendants have filed a motion for summary judgment and a supporting memorandum with accompanying affidavits. [Docket Nos. 15-20]. Defendants argue summary judgment is appropriate for four reasons. First, Defendants argue Plaintiff's request for monetary damages is barred by the Eleventh Amendment. Second, they argue that the Prison Litigation Reform Act prohibits Plaintiff from filing an action seeking damages relating to emotional distress without showing prior physical injury. Third, Defendants argue that none of Plaintiff's constitutional rights were violated. Finally, Defendants argue that they are entitled to qualified immunity.

This Court has jurisdiction pursuant to 28 U.S.C. § 1343 and these proceedings have been referred to the undersigned for report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1(c). For the reasons stated below, it is recommended that Defendants' motion for summary judgment be granted, and that the complaint be dismissed with prejudice.

FILED APR 13 2001
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD ____
DEPUTY CLERK ____

**I. BACKGROUND**

Plaintiff is serving a 102-month sentence for kidnapping. Affidavit of Tim Gorr ("Gorr Aff.") ¶ 3, Exhibit A. Although Plaintiff is currently incarcerated at the Minnesota Correctional Facility at Lino Lakes, between March 11, 1998 and November 28, 2000, he was incarcerated at the Minnesota Correctional Facility at Willow River/Moose Lake ("MCF-WR/ML"). Defendant Sheryl Ramstad Hvass is the Commissioner of the Minnesota Department of Corrections ("DOC"). Compl., § III, B. Defendant Lynn Dingle is the former warden at MCF-WR/ML. Id. Defendant Carla Giersdorf is the Bait Shop Supervisor at MCF-WR/ML. Id.

Inmates at MCF-WR/ML are given the opportunity to participate in various types of employment. Gorr Aff. ¶ 4, Exhibit C. Inmates are paid wages based on piecework formula established by the DOC. Gorr Aff. ¶ 4, Exhibit D. (Minnesota Department of Corrections Division Directive 204.010, page 5.) Department policies establish uniform piece rate procedures. Id. Department regulations require written evaluations of inmate's work performance and establish procedures for performance evaluations and progressive discipline. Id.

During his incarceration at MCF-WR/ML, Plaintiff had numerous work assignments. Affidavit of Dale Zuk ("Zuk Aff."), ¶ 3. One such assignment was in the bait shop. Gorr. Aff. ¶ 5, Exhibit E. Plaintiff started work at the bait shop on November 4, 1998. Id. Plaintiff's supervisor in the bait shop was Defendant Carla Giersdorf. Zuk Aff. ¶ 4.

Plaintiff filed a series of complaints while assigned to the bait shop. On December 14, 1998, he sent a written grievance to Defendant Giersdorf complaining that the piece rate was set too high. Gorr. Aff. ¶ 5, Exhibit F. Defendant Giersdorf responded that the piece rate was based on historical production figures. Id. On December 17, 1998, Plaintiff sent a written grievance to Jim Gerdes, then Industry Director, claiming that Giersdorf was inappropriately discussing his grievance with

other staff. Gorr Aff. ¶ 5, Exhibit G. Gerdes responded by letter to Plaintiff that it was appropriate for Giersdorf to discuss his complaint with other staff. Id. Plaintiff next informed Giersdorf that he would no longer accept any verbal communications from her. Zuk Aff. ¶ 4, Exhibit A. Giersdorf completed Plaintiff's work evaluation for the period October 1, 1998 through December 31, 1998. Despite the filed grievances and growing conflict, Giersdorf rated Plaintiff as average in all eight evaluation criteria. Id.

The next performance evaluation period ran from January 1, 1999 to March 31, 1999. During this period, Plaintiff wrote another grievance to Giersdorf. The grievance stated in pertinent part, "I've logged this day in my journal along with all other inconsistancies (sic) of your supervisory skill. The day I leave here is the same day I turn my journal over to the warden, and, she can see what it is you are all about. This doesn't look good on your Resume." Gorr Aff. ¶ 6, Exhibit H. (emphasis in original.) Giersdorf nonetheless rated Plaintiff average in seven evaluation areas and above average in one area. Zuk Aff. ¶ 5, Exhibit B.

The next performance evaluation period ran from April 1, 1999 to June 30, 1999. Several incidents took place within this period of time. First, on April 5, 1999, Giersdorf completed an incident report regarding Plaintiff. Gorr Aff. ¶ 7, Exhibit I. Giersdorf stated that she had been informed that Plaintiff had asked another inmate what would happen if he took bait shop materials out of the shop. Id. She was worried that Plaintiff subsequently might have removed materials. Removal of materials from the bait shop would represent a violation of DOC rules. Id. In her incident report, Giersdorf expressed her concern about Plaintiff's statement that he was documenting her daily activities so that she might lose her job. Id. Also on April 5, 1999, Deb Abbett filed an incident report stating that an inmate had told her Plaintiff had said that he was trying to get Giersdorf "in trouble or possibly fired." Gorr Aff. ¶ 8, Exhibit J. Lt. Tom Koch authorized a search

of Plaintiff's cell that same date. Gorr Aff. ¶ 9, Exhibit K. On April 6, 1999, Plaintiff met with MCF-WR/ML staff and was instructed to stop threatening staff. Gorr Aff. ¶ 10, Exhibit L. Following the meeting, Plaintiff's cell was searched. Id. His journal was removed from the cell, but later returned. Gorr Aff. ¶ 11, Exhibit M. Plaintiff has admitted that the red Mead journal was not kept in an unopened, sealed envelope that was marked "special or legal." Plaintiff's responses to Defendants' Requests for Admissions, December 19, 2000. Rather, the journal was addressed to LAMP on its inside cover[1]. Id. After the search, Dale wrote a kite to the warden, Defendant Lynn Dingle, requesting that in the future she just ask if she wished to view his journal. Dingle responded, "As you were told yesterday, do your job and you will have no problems. When you make veiled threats and suggest to staff that I am behind it/you will get a reaction." Id. Giersdorf's completed performance evaluation rated Plaintiff's progress in all eight program areas as average during this work period. Zuk Aff. ¶ 6, Exhibit C.

Plaintiff's fourth and final bait shop performance evaluation period ran from July 1, 1999 to September 30, 1999. During this period, Plaintiff continued to complain about pay rates and working conditions in the bait shop. On July 13, 1999, Plaintiff sent a kite to Warden Dingle complaining about shop rules. Gorr Aff. ¶ 13, Exhibit O. Plaintiff filed additional written complaints on July 14, 1999, July 29, 1999, and August 6, 1999. Gorr Aff. ¶ 13-15, Exhibits O,P, and Q. Dingle advised Plaintiff to deal directly with Dennis Sjervin, the industry director. Gorr Aff. ¶ ¶ 14, 15, Exhibits P,Q. On August 16, 1999, Plaintiff wrote to Deputy Commissioner Dennis

---

[1] Prisoners at Stillwater, Saint Cloud, Shakopee, and the workhouses in Wayzata, Lino Lakes and Sandstone, and other locations throughout Minnesota, may sometimes obtain assistance with civil problems through Legal Assistance to Minnesota Prisoners, often referred to as "LAMP".

Benson of the Minnesota DOC regarding his continuing issues with the bait shop and pay and the search of his property that took place on April 6, 1999. Gorr Aff. ¶ 17, Exhibit M. Plaintiff expressed his concern that the warden was aware of his documentation of all incidents in his journal, which he characterized as a continuous letter to his attorney, labelled as such on the inside cover. Id. On September 9, 1999, Dingle responded to Plaintiff on behalf of Deputy Commissioner Benson. Gorr Aff. ¶ 18, Exhibit S. Dingle wrote, "Regarding the journal or paperwork in your room, for security reasons we go through property. Your paperwork was not copied." Id. In her evaluation during this fourth performance evaluation period, Giersdorf noted Plaintiff was below average in two performance areas. Zuk Aff. ¶ 7, Exhibit D. Because Plaintiff failed to maintain average or above rankings in all areas of his evaluation, he was no longer eligible for employment in the bait shop. Zuk Aff. ¶ 8. Plaintiff filed a grievance regarding his termination, but the termination remained in effect. Gorr Aff. ¶ 14, Exhibits T, U.

Plaintiff has filed a Complaint asking the Court for financial compensation due to mental and physical suffering related to stress from continued harassment from agents acting on behalf of the Minnesota DOC. [Docket Nos. 1, 2, 12]. Plaintiff specifically alleges that after making it known that he would be filing a suit for harassment, his mail was searched illegally, he was denied job status and promotions, and he was dismissed without cause. Plaintiff claims that as a result he has suffered sleep loss, nervousness, and severe depression. Plaintiff asks for reinstatement to his position in the bait shop as well as $100, 000.00 in damages, including punitive damages.

Defendants have submitted the affidavit of Terrian Pangerl, the Administrative Registered Nurse Supervisor/Health Science Administrator at MCF-WR/ML. [Docket No. 20]. Pangerl reviewed the medical records maintained by the Minnesota DOC and found the record devoid of evidence of any physical injury, though there were numerous contacts by Plaintiff regarding episodes

of intestinal upset relating to a pre-existing diagnosis.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the case may be decided on purely legal grounds. Fed. R. Civ. P. 56(c); Agristor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987). To be considered material, any disputed facts must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The moving party has the initial responsibility of demonstrating that there is no genuine issue of material fact to be decided. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Once a motion for summary judgment has been made and supported by the pleadings and affidavits as provided in Rule 56(c), the burden shifts to the party opposing the motion to proffer evidence demonstrating that a trial is required because a disputed issue of material fact exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In satisfying this burden, however, the non-moving party must do more than simply establish doubt as to material facts. The party opposing summary judgment may not "rest upon the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Matsushita, 475 U.S. at 586, n. 11; see also Krenik v. County of Le Seur, 47 F.3d 953, 957 (8th Cir. 1995); Fed. R. Civ. P. 56(e).

When there can be no reasonable construction of the facts that would allow the non-moving party to prevail, the remedy of summary judgment is appropriate. Matsushita, 475 U.S. at 586-87. Summary judgment is not appropriate, however, where there are genuine factual issues that "properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Liberty Lobby, 477 U.S. at 250.

Guided by these standards, the court will now proceed to determine whether Defendants are entitled judgment under the applicable law, which, in this case, is found in section 1983 of title 42 of the United states Code and the cases decided thereunder.

B. Official Immunity

A threshold legal issue raised here by Defendants, and potentially dispositive of the motion, as to some or all of the defendants, is whether defendants may be entitled to assert official immunity and what forms of immunity may be applicable

Claims against government actors in their individual capacities differ from those in their official capacities as to the type of conduct that is actionable and as to the type of defense that is available. See Hafer v. Melo, 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself. Id., 502 U.S. at 24-27, 112 S.Ct. at 361-62 (1991). In the present case, the defendants are state prison officials. It is true that a state is generally not subject to suit by citizens in federal court absent the state's consent. See Alabama v. Pugh, 438 U.S. 781, 782, 98 S.Ct. 3057, 3057, 57 L.Ed.2d 1114 (1978). This immunity extends to actions against state officials sued in their official capacities. See Edelman v. Jordan, 415 U.S. 651, 663, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974). It is not specified in the complaint whether the defendant prison officials are being sued in their official or their individual capacities, or both. Since the Eleventh Amendment bars the action against them in their official capacity, that part of the action must be dismissed. The Eleventh Amendment does not otherwise affect suits against public officials in their individual capacities, however. See Scheuer v. Rhodes, 416 U.S. 232, 238, 94 S.Ct. 1683, 1687, 40.

Counsel for the defendants correctly asserts that the Eighth Circuit employs a presumption that § 1983 defendants are being sued in their official capacity absent any indication by the plaintiff to the contrary. See Egerdahl v. Hibbing Comm. College, 72 F.3d 615, 619 (8th Cir. 1995); Nix v. Norman, 879 F.2d 429 (8th Cir. 1989). Official capacity immunity could, and perhaps should, end the analysis in this case. However, given that there is a split among the circuits as to how to proceed in these cases, the Court will go on to address the applicability of qualified immunity and the merits of Plaintiff's claims.[2]

C. Qualified Immunity

Personal capacity claims are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified

---

2

A substantial majority of other circuits--including the Second, Third, Fifth, Seventh, Ninth, Tenth, and Eleventh--have adopted an approach, looking to the substance of the plaintiff's claim, the relief sought, and the course of proceedings to determine the nature of a § 1983 suit when a plaintiff fails to allege capacity. See, e.g., Frank v. Relin, 1 F.3d 1317, 1326 (2d Cir.), cert. denied, 510 U.S. 1012, 114 S.Ct. 604, 126 L.Ed.2d 569 (1993); Parker v. Graves, 479 F.2d 335, 336 (5th Cir.1973); Conner v. Reinhard, 847 F.2d 384, 394 (7th Cir.1988), cert. denied, 488 U.S. 856, 109 S.Ct. 147, 102 L.Ed.2d 118 (1988); Price v. Akaka, 928 F.2d 824, 828 (9th Cir.1990), cert. denied, 502 U.S. 967, 112 S.Ct. 436, 116 L.Ed.2d 455 (1991); Houston v. Reich, 932 F.2d 883, 885 (10th Cir.1991); Lundgren v. McDaniel, 814 F.2d 600, 604 (11th Cir.1987). In contrast, two Circuits--the Sixth and the Eighth--utilize the presumption that a § 1983 complaint is silent as to capacity, it is presumed that a defendant has been sued only in her official capacity. See Wells v. Brown, 891 F.2d 591, 592 (6th Cir.1989); Nix v. Norman, 879 F.2d 429, 431 (8th Cir.1989). This position is based on a perception that the Eleventh Amendment operates as a substantive limitation on the subject matter jurisdiction of the federal courts. See Wells, 891 F.2d at 592; Nix, 879 F.2d at 431. The case of Will v. Michigan Dept. of State Police, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989), establishes that a § 1983 plaintiff cannot overcome a state's immunity under that Amendment merely by naming a state official instead. Because Rule 9(a) of the Federal Rules of Civil Procedure requires that capacity be averred "to the extent required to show the jurisdiction of the court," these circuits have mandated that individual capacity be pleaded expressly to demonstrate that Eleventh Amendment immunity is not implicated and that jurisdiction is proper. Although the First Circuit Court of Appeals has not addressed this issue, a federal district court in that circuit also adopted the minority position. See Charron v. Picano, 811 F.Supp. 768, 772 (D.R.I.1993). That case was not appealed.

immunity may be raised as a defense. Id., 502 U.S. at 25-27, 112 S.Ct. at 362. The defense of qualified immunity gives government officials engaged in discretionary activities immunity from liability unless their conduct violates "clearly established statutory or constitutional rights." Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The availability of the defense should ordinarily be resolved at the earliest opportunity to avoid unnecessary cost and excessive interference with government operations. Id. Whether the controlling legal principle has been clearly established is not to be determined at the most general level of legal abstraction, but by consideration of whether a reasonable official would have known the conduct in question was unlawful in light of information available at the time. Anderson v. Creighton, 483 U.S. 635, 107 S.Ct. 3034, 3039-40, 97 L.Ed.2d 523 (1987). The question becomes whether the defendants in this case acted in such a way that they should have known they were violating a clearly established statutory or constitutional right.

The Court can only identify two possible acts showing a possible violation of Plaintiff's constitutional rights; these being the April 6 search of his cell, and the temporary seizure of his journal. The Supreme Court has considered the issue of a prisoner's reasonable expectation of privacy in his cell. In Hudson v. Palmer, 468 U.S. 517, 104 S.Ct. 3194 (1984), the Supreme Court considered the claim of a prisoner that the search of his cell and destruction of his personal property violated the Fourth Amendment. The Court noted that "[a]" right to privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." 468 U.S. at 528, 104 S.Ct. at 3201. The Court then went on to address the seizure of items within a cell. The Court stated:

> Respondent contends also that the destruction of his personal property constituted an

> unreasonable search and seizure of that property violative of the Fourth Amendment . . . the same reasons that lead us to conclude that the Fourth Amendment's proscription against unreasonable searches is inapplicable in a prison cell, apply with controlling force to seizures. Prison officials must be free to seize from cells any articles, which, in their view, disserve legitimate institutional interests. (emphasis omitted.)

468 U.S. at 528, n. 8, 104 S.Ct. at 3201, n. 8.

Applying the legal standards to the present case, the Court has little difficulty finding that the search of Plaintiff's cell did not clearly violate the Fourth Amendment. There was a documented incident report stating that Plaintiff may have violated DOC rules and regulations by removing bait shop materials to his cell. Gorr Aff. ¶ 7, Exhibit I. Under these circumstances, the Court can find no clear violation of a constitutional right. Moreover, the Court notes that the three defendants in this case did not authorize or conduct the search. Rather, the search was authorized by Lieutenant Tom Koch. Gorr Aff. ¶ 9, Exhibit K.

The seizure of Plaintiff's journal likewise does not give rise to a clear violation of Plaintiff's constitutional rights. Plaintiff argues that the seizure and reading of his legal mail outside his presence represents a violation. However, it is established in the case law that in order to qualify as legal mail, material must be clearly and conspicuously marked on an exterior surface. See Jensen v. Klecker, 648 F.2d 11791182-83 (8th Cir. 1981); Harrod v. Halford, 773 F.2d 234, 235 (8th Cir. 1985). Plaintiff admits that there was no indication on the outside of his journal indicating that it was intended to be legal mail; the red Mead journal was not kept in an unopened, sealed envelope that was marked "special or legal." Plaintiff's responses to Defendants' Requests for Admissions, December 19, 2000. Dale never told officials that the journal was legal mail to his attorneys. In fact, Dale wrote Giersdorf that the journal was intended to be shown to Warden Dingle. Gorr Aff. ¶ 6, Exhibit H. (emphasis in original.) Further, there is no evidence that any of the named defendants

participated in the search or otherwise had sufficient personal involvement to subject them to a § 1983 lawsuit. Plaintiff did amend his complaint to allege an additional incident where mail was opened outside his presence, but that incident did not involve any of these three defendants.

The Court has examined Plaintiff's complaint for other potential constitutional violations. In his complaint, Plaintiff alleges that his First, Sixth, and Fourteenth Amendments were also violated. The Court finds no support for these allegations. The Court has read those portions of the journal accompanying Plaintiff's complaint in this matter. The journal is not entitled to First Amendment protection as it was used to document problems in the workplace and Plaintiff's problems with his supervisor. See Tuttle v. Missouri Dept. of Agriculture, 172 F.3d 1025, 1034 (8th Cir. 1999). Nor can the Court find that the search and seizure were in retaliation for his filing a legal action. The search and seizure took place immediately after two incident reports were filed that alleged Dale had taken materials from the bait shop and threatened his supervisor. There is no evidence to show that any of the defendants were aware at that time that Plaintiff was intending to file a lawsuit. Gorr Aff. ¶ 9. Plaintiff has not made any initial showing that defendants violated his Sixth Amendment rights. Finally, the Court can determine as a legal matter that Plaintiff did not suffer a change or extinguishment of a right or status that would implicate the Fourteenth Amendment. See Paul v. Davis, 424 U.S. 693, 96 S.Ct. 1155 (1976); Morton v. Becker, 793 F.2d 185, 186 (8th Cir. 1986); Lyon v. Farrier, 727 F.2d 766, 769 (8th Cir. 1984); Cooper v. Dupnik, 924 F.2d 1520, 1534 (9th Cir. 1991).

This Court has looked at the facts most favorable to Plaintiff and still cannot find that Defendants violated clearly established constitutional rights so as to overcome qualified immunity.

Defendants are therefore entitled to qualified immunity from this lawsuit. [3]

D. Request for Injunctive Relief

Plaintiff did request in his Complaint that he be reinstated to his prior position in the bait shop. However, since the time of his filing, Plaintiff has been transferred to MCF-Lino Lakes. As this is the case, Defendant's request is moot.

## III. RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED that**:

1. Defendant's motion for summary judgment [Docket No. 15] be **granted**;

2. This action be **DISMISSED WITH PREJUDICE**.

Dated: April 12, 2001

E. S. SWEARINGEN
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving all parties, within ten days after being served with a copy thereof, written objections which specifically identify the portions of the proposed findings, recommendations or report to which objection is being made, and a brief in support thereof. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Circuit Court of Appeals. A party may respond to the objecting party's brief with ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made.

---

3 Because the case is decided on immunity grounds, the Court does not here decide whether Plaintiff has made a showing of physical injury sufficient to bring an action for mental or emotional injury under the Prison Litigation Reform Act § 803(d). The affidavit of Terrian Pangerl does suggest that Plaintiff may be unable to proceed with his claims for monetary damages under the PLRA even if the immunity defenses were inapplicable.